O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| JILL TIZEKKER and KATIE McCLELLAND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BEL-AIR BAY CLUB LTD,<br><br>Defendant. | Case № 2:20-CV-03989-ODW (AFMx)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION [15]** |

## I. INTRODUCTION

Before the Court is Defendant Bel-Air Bay Club, LTD's (the "Club") Motion to Compel Arbitration ("Motion"). (Mot., ECF No. 15.) For the reasons that follow, the Court **GRANTS** the Club's Motion.[1]

## II. BACKGROUND

The Club is an event venue and private beach club operating in the Pacific Palisades neighborhood of Los Angeles, California. (Compl. ¶ 26, ECF No. 1; Mot. 1.) The Club employed Plaintiff Jill Tizekker as a banquet bartender from about September 2016 to June 2020 and Plaintiff Katie McClelland as a full-time bartender

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

from about August 2017 to August 2018. (Compl. ¶¶ 27–28; Mot. 2; Decl. of Charlotte Pattison ("Pattison Decl.") ¶ 8, ECF No. 15-1.) At the beginning of their employment with Club, Plaintiffs each signed a Mutual Agreement to Arbitrate ("Agreement"), which provides:

> [I]n the event of any issue or dispute which requires adjudication arising [sic] or involving any provision under this Handbook or any issue regarding an employee's employment with the Club or the termination of employment . . . the issue will be submitted to and resolved by final and binding arbitration as provided for by the California Arbitration Act.

(Pattison Decl. ¶ 8, Exs. 1 ("Tizekker Agreement"), 2 ("McClelland Agreement"), ECF Nos. 15-2, 15-3 (collectively "Agreements").)

Plaintiffs contend that, during their employment, the Club failed to comply with various state and federal labor laws. (Compl. ¶¶ 1–6.) Accordingly, Plaintiffs initiated this class and collective action challenging the Club's failure to: (1) compensate for all hours worked; (2) pay all minimum wages owed; (3) pay all overtime wages owed; (4) pay all tip wages owed from service charge gratuity payments; (5) reimburse for necessary business expenses; (6) provide accurate, itemized wage statements; and (7) timely pay full wages upon termination or resignation. (*Id.* ¶¶ 7, 64–184.)

Currently, the Club moves to compel Plaintiffs to binding individual arbitration and dismiss all claims. (Mot. 1.) The Motion is fully briefed. (Opp'n, ECF No. 18; Reply, ECF No. 19.)

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs contract disputes relating to arbitration where they affect interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). The FAA establishes "a liberal federal policy favoring arbitration agreements" and requires district courts to compel arbitration on all claims within the scope of the agreement. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In deciding whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). However, in light of the FAA's "savings clause," every arbitration agreement is subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

## IV. DISCUSSION

The Club moves to compel arbitration on the ground that Plaintiffs' claims are subject to arbitration because they arise from Plaintiffs' employment and thus fall within the scope of the valid and enforceable Agreements. (*See* Mot. 6–8.) The Club submits two authenticated copies of the Agreement, one signed by Plaintiff Tizekker, the other by Plaintiff McClelland. (*See* Agreements.)

Plaintiffs "[b]y and large . . . do not oppose [the Club's Motion]" and "concede their claims are likely subject to arbitration." (Opp'n 1, 6.) Significantly, Plaintiffs do not oppose the Club's Motion on the following material points: (1) the FAA applies because the Agreements involve interstate commerce;[2] (2) Plaintiffs each signed the Agreements to arbitrate; (3) the Agreements require individual arbitration of Plaintiffs' claims; (4) and the class and collective claims may be dismissed. (*See* Mot. 3–8; *see generally* Opp'n; Reply 1–2.) Plaintiffs' lack of opposition to each of these arguments

---

[2] The Court further finds that the Club has shown the Agreements sufficiently involve interstate commerce to support the FAA's application here. (*See* Mot. 3–6); *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1100 (C.D. Cal. 2015) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)) ("[T]he FAA applies to employment contracts if the employment affects interstate commerce.").

constitutes concession.[3] *See Heraldez v. Bayview Loan Servicing, LLC*, No. CV 16-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016), *aff'd*, 719 F. App'x 663 (9th Cir. 2018) ("Failure to oppose constitutes a waiver or abandonment of the issue."); *Muller v. Morongo Casino, Resort, & Spa*, No. EDCV 14-02308-VAP (KKx), 2015 WL 3824160, at *5 (C.D. Cal. June 17, 2015) (concluding plaintiff's failure to oppose an argument amounted to concession of that argument).

Accordingly, the Club has established that agreements to arbitrate exist as to Plaintiffs Tizekker and McClelland and require individual arbitration of Plaintiffs' claims. As such, the Court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130.

## A. Plaintiffs' Requests

Despite conceding all of the above, Plaintiffs nevertheless request that the Court "provide clarity and direction to the arbitrator" regarding two purported ambiguities in the Agreements. (Opp'n 2, 5, 6.) Plaintiffs ask the Court to "clarify," first, that the *final and binding* arbitration proceedings will be subject to judicial review pursuant to the California Arbitration Act and, second, that the arbitrator's discretion to award attorneys' fees and costs is limited to essentially ensure Plaintiffs will be awarded their fees and the Club will not. (*Id.* at 3–5.) Plaintiffs suggest that *if* the arbitrator interprets these provisions of Agreements "incorrectly" (according to Plaintiffs), the Agreements *could* be rendered unconscionable. (*Id.*) Plaintiffs further contend the Court may properly "clarify" these issues before compelling arbitration because they are "gateway" issues and the Agreements do not explicitly delegate resolution of ambiguities to the arbitrator. (*Id.* at 2.) Setting aside the utterly speculative nature of Plaintiffs' request for a moment, Plaintiffs' arguments still fail on multiple counts.

---

[3] Regarding the parties' meet and confer efforts, the Court declines to wade into the morass of Plaintiffs' excuses. The Court simply notes that, had Plaintiffs engaged in the professional courtesy of responding to the Club's correspondence during the *weeks* in which the Club attempted to confer before filing this Motion, (*see* Decl. of Raina Singer ¶¶ 3–5, ECF No. 15-4), it appears likely that the Motion could have been avoided altogether, sparing the parties' and the Court's time and resources.

*1.     Unconscionability*

Plaintiffs drop the term "unconscionable" like a magic talisman once in the introduction to their Opposition, but otherwise offer literally no argument to suggest the Agreements or their provisions are unconscionable. (*See generally id.*) Under California law, unconscionability requires both a procedural and substantive component and the party opposing arbitration bears the burden of proof. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260–61 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US)*, 55 Cal. 4th 223, 236 (2012)). Plaintiffs do not even attempt to explain what it is about the Agreements or these provisions that is somehow, for example, oppressive, surprising, overly harsh, or one-sided. *See Armendariz*, 24 Cal. 4th at 114 (describing procedural unconscionability as oppressive or surprising and substantive unconscionability as overly harsh or one-sided). Plaintiffs provide absolutely no basis for finding unconscionability. Accordingly, Plaintiffs fail to disturb the conclusion that the Agreements are valid and enforceable.

*2.     "Clarification"*

Moving on, Plaintiffs argue the Court should "clarify" purported ambiguities in the Agreements as to the availability of judicial review and the arbitrator's discretion to award attorneys' fees. They contend these issues are "gateway questions" and the Agreements are silent as to authority to interpret ambiguities. (Opp'n 2.) Plaintiffs' arguments strain credulity.

To begin, the availability of judicial review and propriety of attorneys' fees awards are not "gateway" issues, as Plaintiffs must know, assuming they read the cases they cite to the Court. Rather, "gateway" issues concern "questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); (*see* Opp'n 2 (quoting *Momot*, 652 F.3d at 987)). The availability of

post-arbitration judicial review and the potential for an award of attorneys' fees simply do not fit that bill.

Next, the Agreements are *not* silent concerning delegation of authority to interpret perceived ambiguities. The Agreements provide that the parties will arbitrate "any issue or dispute . . . involving any provision under this Handbook." (Agreements 1.) This language necessarily includes issues or disputes involving ambiguous provisions in the Agreements and thus delegates *to the arbitrator* interpretation of any such provisions. Therefore, the arbitrator, not the Court, must resolve Plaintiffs' purported ambiguities. *See Byrd*, 470 U.S. at 218 ("[D]istrict courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

Finally, Plaintiffs fail to actually identify any ambiguity in the Agreements. Plaintiffs contend the Agreements are silent and therefore ambiguous as to the availability of judicial review. (Opp'n 2, 3.) But the Agreements require that disputes "will be submitted to and resolved by *final and binding* arbitration as provided for by the California Arbitration Act." (Agreements 1 (emphasis added).) The Court sees no ambiguity; "final and binding arbitration" means just that. Plaintiffs also contend the Agreements are "subjectively vague" regarding the arbitrator's discretion to award attorneys' fees and costs. (Opp'n 2, 3–5 (contending language is ambiguous because the arbitrator could refuse to award Plaintiffs their fees or decide to grant the Club its fees).) Once again, the Court finds no ambiguity. The Agreements provide "the arbitrator will have the authority to require *either party* to pay the fee for the other party's representation during the arbitration, *as is otherwise permitted under federal or state law* . . . ." (Agreements 2 (emphases added).) The parties clearly granted the arbitrator the authority described to award attorneys' fees as permitted by law. That Plaintiffs now fear the arbitrator may exercise that authority in a manner Plaintiffs deem undesirable is not cause for this Court's "clarification."

In short, Plaintiffs provide absolutely no basis for the orders they seek and stretch both the law and the facts in their nominal opposition. The Court denies Plaintiffs' meritless request for an advisory opinion providing needless "clarity and direction to the arbitrator." (Opp'n 5.)

**B.     Dismissal**

In the Ninth Circuit, the district court has discretion to dismiss a party's complaint where the court finds that the arbitration clause covers all of the party's claims. *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (affirming dismissal of action without prejudice where "all of the claims raised in the action are subject to arbitration"); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). All of Plaintiffs' claims are subject to individual arbitration and neither side has presented any compelling reason to stay the case. *See Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal. 2015) (dismissing where neither party provided a compelling reason to keep the case on the docket). Therefore, the Court in its discretion **DISMISSES** this action without prejudice.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Club's Motion and **ORDERS** Plaintiffs to individual arbitration. (ECF No. 15.) The case is **DISMISSED**. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

January 13, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**